IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRSTEN HOUGHTON, | CIVIL ACTION NO. 1:07-CV-0315 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | |
| DAUPHIN COUNTY EMERGENCY MANAGEMENT AGENCY, et al., | JURY TRIAL DEMANDED |
| Defendants. | |

# **M E M O R A N D U M**

This case involves employment discrimination and retaliation claims pursuant to 42 U.S.C. §§ 1983 and 1985, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951 et seq. ("PHRA"). Presently before the court is the Motion to Dismiss of Defendants Dauphin County Emergency Management Agency ("EMA"), Dauphin County, Michael Zeigler, Mark Rothermel,[1] and John Harlacker (Doc. 5). Because Plaintiff, Kirsten Houghton, primarily responds with attempts to clarify the precise nature of the claims set forth in a rather inartfully drafted complaint, the court will grant Plaintiff leave to amend the complaint, as set forth here.

---

[1] Defendants' reply brief (Doc. 9) notes that the complaint incorrectly identified Defendant Rothermel as Mark "Rothermal." The court will correct the spelling in the case caption and calls Plaintiff's attention to the correction for purposes of amending the complaint.

**I.        Background**

On February 19, 2007, Houghton filed a three-count complaint (Doc. 1), alleging 1) employment discrimination on the basis of her gender, consisting of sexual harassment and a hostile work environment; 2) retaliation for complaining about her work conditions; and 3) discrimination and retaliation on the basis of her pregnancy.

The facts as alleged in the complaint are as follows.  Houghton began working for Defendant EMA on October 10, 2003, as a Dispatcher at its Communications Center.  (Doc. 1 ¶ 8.)  During the period from January 21, 2005, through August 15, 2005, male co-workers would regularly download pornographic images to their work computers and openly display the images.  (*Id.* ¶¶ 9-10.)  Pornographic magazines, television programs, and movies were regularly available and openly viewed by male co-workers.  (*Id.* ¶¶ 11-12.)  In addition, male co-workers regularly and openly referred to female co-workers as "skirts" or "bitches."  (*Id.* ¶13.)  All of the foregoing occurred in Houghton's presence while at work.  (*Id.* ¶¶ 9-13.)

During Houghton's training, her shift supervisor, Defendant Michael Zeigler, was demeaning and insulting to her, but not to similarly situated male co-workers.  (*Id.* ¶¶ 14-15.)  Houghton complained to Zeigler, but he continued his behavior and regularly and consistently publicly embarrassed Houghton.  (*Id.* ¶¶ 16-17, 33.)  On or about April 6, 2005, Houghton complained to Zeigler about the sexual harassment and hostile work environment.  (*Id.* ¶ 18.)  Zeigler responded that "this type of harassment has been happening for many years since women have started working here, and it will continue for years to come."  (*Id.* ¶ 19.)  He took no

corrective action.  Zeigler also advised Houghton to talk to other female co-workers regarding ways to learn to deal with the harassment.  (*Id.* ¶¶ 19-20.)

On or about April 6, 2005, Houghton also informed Zeigler that she was pregnant; Zeigler expressed frustration that her pregnancy would result in Houghton's absence during the winter holidays.  (*Id.* ¶¶ 43-44.)  On or about April 27, 2005, Zeigler denied Houghton the opportunity to receive any police training, a prerequisite for promotion opportunities, stating that it was due to her pregnancy.  (*Id.* ¶¶ 45-46.)  Houghton did not receive police training from that time through the time of her discharge, about four months later.  (*Id.* ¶¶ 36, 47.)

On May 11, 2005, Houghton again reported sexual harassment and a hostile work environment to Zeigler, as well as to Defendants Mark Rothermel, Training Manager, and Jack Harlacker, Communications Center Manager.  (*Id.* ¶ 21.)  In response, Rothermel accused Houghton of lying and being intimidated by men, extended her training period to June 6, 2005, and informed Houghton that at that time a decision would be made regarding whether she would be terminated.  (*Id.* ¶ 22.)  Harlacker indicated that Houghton should return with further complaints in three weeks, if she were still employed by Defendants.  (*Id.* ¶ 23.)

On June 3, 2005, Houghton complained to Kay Sinner, the Employment and Affirmative Action Manager, but her complaints were not investigated.  (*Id.* ¶¶ 24-25.)

From June 7 through July, 2005, Zeigler denied Houghton the opportunity to utilize her fire training, which is a prerequisite for promotion opportunities, and said she had made things worse for herself by complaining.  (*Id.* ¶ 34-35.)

On August 16, 2005, Defendants terminated Houghton, even though she had performed better than or equal to similarly situated co-workers who had not complained regarding the work environment.  (*Id.* ¶ 36.)

Defendants filed a motion to dismiss the complaint on March 19, 2007.  The issues have been briefed and are ripe for disposition.

**II.**         **Legal Standard – Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint.  *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendants on notice of the essential elements of the plaintiff['s] cause of action."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  The court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999).

In addition, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient.  *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.      Discussion**

Defendants raise four challenges in their motion to dismiss: 1) because EMA is not a distinct and separate legal entity from Dauphin County, dismissal of the claims against EMA is warranted; 2) the Title VII claims against the individual Defendants should be dismissed because Title VII is not a basis for individual liability; 3) Plaintiff has failed to sufficiently allege the elements of conspiracy under 42 U.S.C. § 1985; and 4) the PHRA precludes punitive damages generally, while §§ 1983 and 1985 and Title VII preclude punitive damages against Dauphin County and EMA.

Although Plaintiff alleges three counts in her complaint, within each count are blanket allegations of violations of §§ 1983, 1985, Title VII, and the PHRA, against all Defendants.  Similarly, Plaintiff seeks compensatory and punitive damages for each count, but fails to identify the specific legal bases for those requests or relate the relief sought to any particular Defendants.  Accordingly, Plaintiff devotes most of her brief in opposition to the motion to dismiss clarifying the exact nature and scope of her claims in a manner that essentially concedes many of the arguments advanced by Defendants.  It is clear to the court that substantial amendment of the complaint is in order, but the court will address each of Defendants' challenges in turn.

**A.     EMA's Status as a Defendant**

Defendants argue that EMA is not properly included as a Defendant because it is not a legal entity separate and distinct from Dauphin County.  Plaintiff does not dispute this, but only states that it named EMA in an attempt to clarify which agency within Dauphin County was involved in the instant matter.  The court

acknowledges that Plaintiff's complaint identifies "Dauphin County Emergency Management Agency, Dauphin County" somewhat singularly (*see id.* ¶ 4), however, the caption lists EMA and Dauphin County as separate Defendants. Accordingly, the court will permit amendment of the complaint to reflect Plaintiff's concession that it did not intend to allege claims against EMA.

### B. Title VII Claims Against Zeigler, Rothermel, and Harlacker

Defendants assert that any Title VII claims against Zeigler, Rothermel, and Harlacker[2] in their individual capacities should be dismissed because Title VII does not provide for individual liability. Plaintiff responds that she does not intend to assert individual liability under Title VII against Zeigler, Rothermel, and Harlacker. Because the complaint as currently drafted is unclear in that regard, the court will permit Plaintiff to amend the complaint to resolve this confusion.

### C. The § 1985 Conspiracy Claim

#### 1. Intracorporate Conspiracy Doctrine

Defendants challenge the viability of a conspiracy claim between Dauphin County and the individual Defendants on the basis of the intracorporate conspiracy doctrine; the principle that an "entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003). In response, Plaintiff states that she is only alleging that the individual Defendants conspired with one another. There is an exception to the intracorporate conspiracy doctrine when an individual acts solely for personal

---

[2] Defendants' brief appears to incorrectly refer to Harlacker as Ledbetter in one instance. (*See* Doc. 6 at 4.) Absent any reason, by virtue of the facts discussed and remainder of the arguments, to find otherwise, the court will assume that Defendants meant to type Harlacker.

benefit. *Id.* However, the complaint as currently drafted does not make this distinction. The court will permit Plaintiff to amend the complaint accordingly.

## 2. **Individual Defendants**

Defendants' argue that Plaintiff fails to sufficiently allege a claim for conspiracy to violate § 1983 under § 1985(3).[3] Plaintiff counters that the complaint should be interpreted liberally to support such a claim, pending discovery. In order to successfully plead a § 1983 conspiracy claim, particularity is required such that the pleading gives defendants sufficient notice of the precise misconduct alleged. *Aguilar v. Pa. Apple Mktg. Program*, No. 1:05-CV-0804, 2006 WL 167820, at *5 (M.D. Pa. Jan. 19, 2006). Sufficiently particularized pleadings will include "(1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose." *Id.* The court must look beyond any conclusory allegations of conspiracy to "the factual scenario itself to examine whether the conduct alleged, viewed most favorably to plaintiffs, is reasonably susceptible to falling within the conclusions alleged." *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988). A finding that allegations lack the requisite particularity generally warrants the opportunity for amendment. *Id.* at 1114. In addition, when the lack of factual specificity derives from the defendant's control of the information, the plaintiff should be afforded "a reasonable amount of discovery." *Id.*

Plaintiff requests such discovery here. Plaintiff's allegations are sufficiently particularized in the sense that they identify the period of the alleged

---

[3] The other subsections of § 1985–preventing an officer from performing duties and obstructing justice; intimidating party, witness, or juror–do not apply in the instant circumstances. *See* 42 U.S.C. § 1985.

conspiracy, from January 21, 2005 through August 15, 2005, and the object of the conspiracy, to discriminate, harass, and retaliate against Plaintiff.  However, the only allegation of actions taken to achieve that purpose consist either of actions attributable to each Defendant individually, or the conclusory allegation of a conspiracy.  Under these circumstances, the court thinks it is fair to say that the relevant information is in Defendants' control.  Accordingly, the court will reserve ruling on the conspiracy claim pending a reasonable amount of discovery.  The court's decision to permit such discovery does not relieve Plaintiff of her obligation to amend the complaint as set forth in this memorandum and the accompanying order.

### D. **Punitive Damages**

Finally, Defendants challenge Plaintiff's requests for punitive damages in several respects.  First, Defendants aver that under § 1983 municipalities are immune from punitive damages.  Second, Defendants similarly argue that Title VII exempts Dauphin County, as a governmental agency, from punitive damages claims.  Third, Defendants state that punitive damages are not recoverable under the PHRA.  Again, Plaintiff's response does not challenge Defendants' assertions, but simply clarifies that she only seeks punitive damages against the individual Defendants pursuant to her §§ 1983 and 1985 claims.  The complaint as drafted does not conform to such a clarification.  Therefore, the court will permit Plaintiff to amend the complaint in a manner that correctly identifies the nature of the relief Plaintiff seeks from specific Defendants for specific claims.

**IV.        Conclusion**

In accordance with the foregoing, the court will defer ruling on Defendants' motion to dismiss portions of the complaint and permit Plaintiff to amend the complaint. In addition to the Plaintiff's concessions and clarifications noted above, Plaintiff's amended complaint should allege, in each separate count, the law providing the basis for the alleged violation, the specific Defendant or Defendants who committed the alleged violation, and the specific relief sought for the alleged violation. This will likely result in an increased number of counts in order to provide the necessary clarity and notice to Defendants of the claims against them and the corresponding relief sought. An appropriate order will issue.

   s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: April 20, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRSTEN HOUGHTON, | CIVIL ACTION NO. 1:07-CV-0315 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | |
| DAUPHIN COUNTY EMERGENCY MANAGEMENT AGENCY, et al., | JURY TRIAL DEMANDED |
| Defendants. | |

# **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) A ruling on Defendants' motion to dismiss the complaint with respect to the § 1983 conspiracy claim is deferred pending a reasonable amount of discovery, not to exceed 60 days from the date of this order;

2) A ruling on Defendants' motion to dismiss the complaint with respect to the remainder of the claims challenged is deferred pending the filing of an amended complaint;

3) Plaintiff shall file an amended complaint that comports with the foregoing memorandum of law and that alleges, in each separate count, the law providing the basis for the alleged violation, the specific Defendant or Defendants who committed the alleged violation, and the specific relief sought for the alleged violation. Plaintiff shall file the amended complaint no later than May 1, 2007; and

       4) The case management conference shall proceed as previously scheduled by the court.

                                          s/Sylvia H. Rambo
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated: April 20, 2007.